

30

# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS - BROWNSVILLE DIVISION -

United States District Court
Southern District of Texas
ENTERED

DEC 09 1998

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| RICARDO N. ADOBBATI | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-97-178 |
| | § | |
| | § | |
| GUARDIAN LIFE INSURANCE, | § | |
| MORELAND, BLACK & MANNING, | § | |
| INC., AND DONALD R. BLACK | § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before this Court is Defendants Guardian Life Insurance Company of America ("Guardian"), Moreland, Black & Manning, Inc. ("Moreland"), and Donald R. Black's ("Black") Motion to Dismiss. (Docket No. 22). Plaintiff Ricardo Adobbati has filed Plaintiff's Response to Defendant's Motion to Dismiss Subject to Plaintiff's Pending Motion for Reconsideration on its Motion for Remand and Request for Oral Hearing. (Docket No. 23).

## PROCEDURAL NATURE OF SUIT

Dr. Adobbati filed suit against the Defendants on or about January 24, 1997. Defendants failed to answer within 20 days. On or about March 3, 1997, Plaintiff filed a Motion for Default Judgment. Defendants filed answers to Plaintiff's Original Petition on or about March 5, 1997. Beginning in May 1997, the parties engaged in discovery.

Defendant Guardian removed Cause No. 97-01-00379-C from the 197th Judicial District Court of Cameron County, Texas on August 18, 1997. Defendants Moreland and Black filed a Consent to Guardian's Notice of Removal.

Dr. Adobbati filed a Motion for Remand and Sanctions on September 12, 1997. (Docket No.

ClibPDF - www.fastio.com

4). Defendants Moreland and Black filed a joint Notice of Opposition to Plaintiff's Motion for Remand and Sanctions. (Docket No. 9). Guardian filed a brief in response to Plaintiff's motion on November 7, 1997. (Docket No. 10). A reply to Guardian's brief was filed by Dr. Adobatti on November 12, 1997. (Docket No. 11). A hearing on Plaintiff's Motion was held on November 14, 1997. (Docket No. 12).

On April 9, 1998, this Court recommended in Magistrate Judge's Report and Recommendation that Plaintiff's Motion for Remand and Sanctions be denied. (Docket No. 16). An Order adopting the report and recommendation was entered on July 7, 1998. (Docket No. 20).

Plaintiff filed a Motion for Reconsideration and to Set Aside the court's Order of July 7, 1998. (Docket No. 21). Defendants filed a Motion to Dismiss on July 20, 1998. (Docket No. 22). On July 28, 1998, Plaintiff filed a Response to Defendant's Motion to Dismiss subject to Plaintiff's Pending Motion for Reconsideration on its Motion for Remand and Request for Oral Hearing. (Docket No. 23). Defendant filed Guardian's Response in Opposition to Plaintiff's Motion for Reconsideration and to Set Aside Order and Request for Oral Hearing on August 3, 1998. (Docket No. 24).

On August 10, 1998, an Order was entered denying Plaintiff's Motion for Reconsideration and to Set Aside Order and Request for Oral Hearing. (Docket No. 25).

## BACKGROUND

Ricardo N. Adobbati, M.D., P.A. (the "P.A.") established the Ricardo N. Adobbati, M.D., P.A. Defined Benefit Plan (the "Benefit Plan" ) in March 1980 to provide retirement and incidental death benefits to P.A. employees. (Docket No. 10, Ex. "E" at 57:1-5, & Ex. 2). The Benefit Plan was created pursuant to the Employment Retirement Income Security Act ("ERISA") under 29



ClibPDF - www.fastio.com

U.S.C. §§ 1001 et al. (Docket No. 10, Ex. "E" at 28:8-16 & 30:3-6.) The Benefit Plan was funded entirely by P.A. contributions which are not taxed as income until they are distributed to the Benefit Plan participants/beneficiaries. (Docket No. 10, Ex. "E" at 21:1-4 & 22:13-21). The Benefit Plan beneficiaries included Dr. Ricardo N. Adobbati and other employees of the P.A. (Docket No. 10, Ex. "D" at 12:8-13; see also Ex. "E" at 20:21-24). Black, as an agent of Moreland, created the Benefit Plan. (Docket No. 10, Ex. "D" at 23:23-25 & 28:13-20).

To minimize federal tax consequences, on or about June 24, 1988, Black and Moreland advised the Benefit Plan to purchase a life insurance policy from Guardian. (Docket No. 10, Ex. "D" at 33:6-23.) The policy insured Dr. Adobbati, and became an asset of the Benefit Plan, which was the beneficiary of the life insurance policy. (Docket No. 10, Ex. "E" at 26:2-4.) This Benefit Plan was later terminated based on the advice of Moreland and Black. (Docket No. 10, Ex "E" at 37:20-25).

It is undisputable that Moreland and Black recommended termination of the Benefit Plan because it was overfunded, precluding any further tax-free contribution to the plan for several years. Administrative expenses also contributed to the Benefit Plan's demise. (Docket No. 10, Ex. "E" at 37:20-25, see also Ex. "E" at 42:17-23) On or about September 1, 1988, the Internal Revenue Service ("IRS"), in a letter to Dr. Adobbati, determined that the Benefit Plan could be terminated without adversely affecting the participants. (Docket No. 10, Ex. "E" at 52:22-25, see also 57: 1-12). Upon termination of the Benefit Plan, the ownership of the insurance policy was transferred to a life insurance trust to avoid estate tax consequences. (Docket No. 10, Ex. "E" at 85:7-19).

Dr. Adobbati has brought several state-law causes of action claiming that Defendants intentionally or negligently committed acts attempting to conceal the amount of premiums required



ClibPDF - www.fastio.com

to fund the insurance policy. (Docket No. 10, Ex. "A," p. 4). Dr. Adobbati alleges that Black fraudulently induced Dr. Adobbatti to surrender large sums of money to purchase a life insurance policy for the Benefit Plan through Guardian. (Docket No. 10, Ex. "A", pp.8 & 14). At the time the parties entered into said insurance contract, the Defendants allegedly represented to Dr. Adobbatti that the policy would be paid out in full in seven years through accelerated premium payments. (Docket No. 10, Ex. "A," p. 4). Dr. Adobbatti allegedly agreed to purchase the policy relying on the premium representations made by Black. (Docket No. 10, Ex. "A," pp.10 & 14). However, after the seven years period lapsed, Dr. Adobbatti was informed that additional premium payments were due. (Docket No. 10, Ex. "A," pp. 6 & 11). Dr. Adobbatti claims he has incurred substantial expenses as a result of having to make additional premiums to the same policy while seeking other policies to replace the Guardian insurance policy. (Docket No. 10, Ex. "A,"p. 15).

Dr. Adobbati has sued Defendants for breach of contract, fraud, negligence, and intentional interference with a contract. (Docket No. 10, Ex. "A," pp. 8-17). Dr. Adobbati argues that these acts were in violation of the Texas Insurance Code Article 21.21 and the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE § 17.46. *Id.* Plaintiff also argues that Defendants engaged in a civil conspiracy. *Id.* Plaintiff seeks to rescind and reform the contract. *Id.*

## REPORT AND RECOMMENDATION

### PREEMPTION

ERISA preempts claims that *relate to* an employee benefit plan. See 29 U.S.C. §1144(a). Courts have interpreted this preemption broadly. See *Corcoran v. United Healthcare Inc.* 965 F.2d 1321, 1328-29 (5th Cir. 1992), *cert denied*, 506 U.S. 1033 (1992). A state law cause of action relates to an employee benefit plan whenever it has a "connection with or reference to such a plan."



ClibPDF - www.fastio.com

*Id.* at 1329 (citing *Shaw v. Delta Airlines, Inc.* 643 U.S. 85, 96-97 (1983)).

The Fifth Circuit has held that ERISA preempts state law claims, based on breach of contract, fraud, or negligent misrepresentation, that have the effect of orally modifying the express terms of an ERISA plan. See *Hubbard v. Blue Cross & Blue Shield Association* 42 F.3d 942, 946 (5th Cir. 1995) *cert denied*, 515 U.S. 1122 (1995). State law causes of action, which are preempted by ERISA, share at least two characteristics: (1) the state law claims address areas of exclusive federal concern, and (2) the claims directly affect the relationship among the traditional ERISA entities--the employer, the plan, and its fiduciaries, and the participants and beneficiaries. *Id.* See also *Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir. 1990) ("A state law claim.... which does not affect the relations among the ERISA entities (the employers, the plan fiduciaries, the plan, and the beneficiaries) is not preempted by ERISA").

There is no question that Dr. Adobbatti's state law claims "relate to" an employee benefit plan and as such are preempted by ERISA. The Benefit Plan clearly indicates that it was created pursuant to ERISA. Additionally, an analysis of Adobatti's claims establishes that they have "a connection with or reference to [an employee benefit] plan."

Misrepresentations which took place at "'varying times prior to the initial purchase of the policy in 1988 and continuing into 1997'" serve as the basis of Dr. Adobbati's suit against all three Defendants. (Docket No. 11, p.8). For approximately four years, the insurance policy at issue was an asset of the Benefit Plan. The life insurance policy purchased by the Benefit Plan pursuant to the advice of Black and Moreland, who served as the administrators of the Benefit Plan for approximately two years. (Docket No. 10, Ex. "E" at 36:25-37:6). For two to three months, Black and Moreland explored the possibility of purchasing the life insurance policy. (Docket No. 10, Ex.



ClibPDF - www.fastio.com

"E" at 43:19-24). In his response to Guardian's Interrogatory No. 15, Dr. Adobbati responded that the insurance policy had been obtained with his funds through the Benefit Plan entity.[1] (Docket No. 10, Ex. "B"). Dr. Adobbatti, in his Reply to Defendants' Response to Motion for Remand and Sanctions, stated that "the purchase of the policy was only for purposes of terminating the plan." Finally, (Docket No. 4). Plaintiff notes that the suit "does not involve Mr. Black's actions in controlling or terminating the pension plan, but rather involves his misrepresentations regarding the policy itself." *Id.* It is evident from these facts that Adobbati's state law claims "relate to an employee benefit plan" pursuant to 29 U.S.C. § 1144(a).

Federal jurisdiction over this cause of action is further warranted given the fact that Dr. Adobbatti's state law claims address areas of exclusive federal concern. As the owner of the life insurance policy, the Benefit Plan provided tax benefits for participants in the plan as well as retirement and incidental death benefits to the Benefit Plan's employees. It appears that there must be approval by the above-mentioned governmental entities before creating a Benefit Plan. Even amendments or changes to the structure of the Benefit Plan also require approval of the appropriate government agency. According to Dr. Adobbati's accountant, approval by the IRS is required before a Benefit Plan is terminated. (Docket No. 10, Ex. "E" at 52:22-25; 57:1-12). In the current case, the IRS permitted termination of the Benefit Plan, allowing the winding up the plan and distribution of assets to plan participants.

Further, the nature of the relationship between the parties and the purpose for creating of the Benefit Plan intertwine to make this action one involving "traditional ERISA entities." This

---

[1] On or about August 7, 1997, Dr. Adobbati filed answers and responses to Guardian's First Set of Interrogatories and Requests for Production.



ClibPDF - www.fastio.com

court cannot disregard that Black and Moreland were pension advisors who suggested that the Benefit Plan purchase the life insurance policy for pension plan termination purposes. For at least two years, they handled the Benefit Plan, which included the life insurance policy. The determination to "convert" the life insurance policy from the plan to a trust was in keeping with the fiduciary duties of the Black and Moreland. It is difficult for this court to separate Defendants' actions from the Benefit Plan.

Pursuant to this court's analysis under the established guidelines, this court finds that preemption under ERISA is warranted, and federal jurisdiction over this cause of action is proper.

INDIVIDUAL LIABILITY

A state law claim which does not affect the relations among the principal ERISA entities (the employer, the plan fiduciaries, the plan, and the beneficiaries) as such, is not preempted by ERISA. *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1470 (5th Cir. 1986), *cert. denied*, 479 U.S. 1034 (1987). ERISA does not preempt claims against non-fiduciary insurance brokers. For Adobbatti's state law claims to survive, Black must be qualified as a non-fiduciary insurance agent.

A person is considered an ERISA fiduciary if "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respect management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

Conscientious or even miscreant professionals, consultants, advisors or sales representatives



ClibPDF - www.fastio.com

who provide services to ERISA plans are not automatically transformed into fiduciaries. *Reich v. Lancaster*, 55 F.3d. 1034, 1049 (5th Cir. 1995). To be fiduciaries, such persons must exercise discretionary authority and control that amounts to actual decision making power. *Reich*, 55 F.3d at 1049. The authority of an insurance agent, appointed fund administrator pursuant to a contract, to grant or deny claims, to manage and disburse fund assets and to maintain claims files clearly has discretionary control within the meaning of section 1002 (21)(A). See *American Federation of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Society of the United States*, 841 F.2d 658, 663 (5th Cir. 1988). An insurance agent's fiduciary status is not diminished by the trustees' final authority to grant or deny claims and approve investments. *American Federation of Unions Local 102 Health & Welfare Fund*, 841 F.2d at 664. Further, the Fifth Circuit has held that an agent effectively exercised discretionary authority where unsophisticated trustees accepted every recommendation in regards to health, medical, and life insurance policies and even where to invest the Fund's money. *Reich*, 55 F.3d. at 1049.

It is clear from the pleadings and evidence presented that Black effectively exercised discretionary authority and control over the Plan within the meaning of 29 U.S.C. §1002(21)(A). As such, Black qualifies as an ERISA fiduciary agent and Adobbatti's state law claims against him are preempted by ERISA.

Although the benefit Plan named Dr. Adobbatti both as the Plan Administrator and trustee, Dr. Adobbatti served nominally. (Docket No. 10, Ex. "D" at DOL 000005 & 000006). Dr. Adobbatti contracted the services of Moreland, Black & Manning to act as Plan Administrators and Black acted as the insurance agent for the Plan. (Docket No. 10, Ex. "D" at DOL 0000043). Black advised Dr. Adobbatti regarding amendment and termination of the plan, benefit amounts to be



ClibPDF - www.fastio.com

distributed to participants, investment of plan assets in the Policy and the income tax consequences of these actions. (Docket No. 10, Ex. "E" at 35:14-25; 40:14-25 & 41:7-13; see also Ex. "D" at 20:16-21:2 & 60:13-23 ). In his depositions, Dr. Adobbatti further claims that he had "no idea" what he was doing, that he had no expertise in operating the Plan, and that he followed Black's advice "to the letter." (Docket No. 10, Ex. D at 27:13-14; 38:5-12; 27:18-23:3).

In light of the Fifth Circuit's holdings, this court concludes that Dr. Adobatti's state law claims against Black are of the genre which do affect the relations among the principal ERISA entities and as such are preempted by ERISA.

IT IS THEREFORE RECOMMENDED that Defendant's Motion to Dismiss be GRANTED as to Guardian Life Insurance, and Moreland, Black & Manning, Inc.

IT IS FURTHER RECOMMENDED that Defendants' Motion to Dismiss be GRANTED as to Plaintiff's claims against Donald R. Black.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. See *Douglass v. United Service Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this the 8th day of December, 1998.

John Wm. Black
United States Magistrate Judge



ClibPDF - www.fastio.com